# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VÄLINGE INNOVATION AB, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> HALSTEAD NEW ENGLAND CORP. ) <br> and HOME DEPOT U.S.A., INC. ) <br> ) <br> Defendants. ) | Civil Action No. 16-1082-LPS-CJB |

## REPORT AND RECOMMENDATION

1. In this patent infringement action filed by Plaintiff Välinge Innovation AB ("Plaintiff" or "Välinge") against Defendants Halstead New England Corporation ("Halstead") and Home Depot U.S.A., Inc. ("Home Depot") (collectively, "Defendants"), pending is Defendants' motion to dismiss portions of the currently-operative Second Amended Complaint ("Motion"), filed pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.I. 34) More specifically, Defendants move to dismiss: (1) Counts III and IV of the Second Amended Complaint ("SAC"), which, respectively, allege direct infringement of method claims 1, 25, and 30 of United States Patent No. 8,365,499 ("the '499 patent") and method claim 1 of U.S. Patent No. 8,756,899 ("the '899 patent") (these claims are collectively referred to herein as the "asserted method claims"); (2) Counts X-XVIII of the SAC regarding allegations of contributory and induced infringement of all asserted patents;[1] and (3) allegations of willful infringement as to Counts I-XVIII. (D.I. 35 at 2-3) The Motion has been referred to the Court for resolution, (D.I. 5), and was fully briefed on June 5, 2017, (D.I. 54). This Report and Recommendation addresses

---

[1] In addition to the '499 and '899 patents, the patents in this action include U.S. Patent Nos. 7,398,625; 7,763,345; 8,021,741; 8,584,423; 8,658,274; 8,834,992; and 9,249,581 (collectively, the "asserted patents"). (D.I. 1 at ¶ 1)

Defendants' Motion as to the sufficiency of Välinge's allegations regarding direct and indirect infringement. A separate Report and Recommendation will issue that addresses the sufficiency of the willful infringement allegations.

2. With regard to Defendants' argument that Välinge has not sufficiently pleaded plausible claims of direct infringement of the asserted method claims, the Motion is GRANTED-IN-PART.[2] An adequately pleaded claim for direct infringement of a method claim requires allegations that the alleged infringer "'perform[ed] all the steps of the claimed method, either personally or through another acting under his direction or control.'"[3] *Courtesy Prods., L.L.C. v.*

---

[2] The standard of review here is the familiar two-part analysis applicable to motions made pursuant to Rule 12(b)(6). First, the court separates the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Second, the court determines "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). A plausible claim does more than merely allege entitlement to relief; it must also demonstrate the basis for that "entitlement with its facts." *Id.* Thus, a claimant's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In assessing the plausibility of a claim, the court must "'construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Fowler*, 578 F.3d at 210 (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).

[3] The reference to "direction or control" of third parties is a reference to the theory of "divided infringement," which involves a scenario where more than one actor is involved in practicing the steps of the method. *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015). An alleged infringer can be held responsible for another's performance of method steps (and thus can be said to directly infringe a method claim in such a scenario) if the alleged infringer "directs or controls" a third party's performance of the claimed steps or the alleged infringer and the third party form a "joint enterprise." *Id.* at 1022-23. In a "directs or controls" analysis, courts are to consider the "general principles of vicarious liability[,]" such as whether the alleged infringer is acting through an agent, has contracted with the third party "to perform one or more steps of a claimed method[,]" or where the "alleged infringer conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method and establishes the manner and timing of that performance." *Id.*

*Hamilton Beach Brands, Inc.*, 73 F. Supp. 3d 435, 439 (D. Del. 2014) (quoting *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1307 (Fed. Cir. 2012)). The asserted method claims of the '499 and '899 patents concern "method[s] of assembling resilient floorboards," which are provided with a "mechanical locking system" that locks "two adjacent floorboards[.]" (*See, e.g.*, D.I. 26 at ¶¶ 76, 87; *see also id.*, exs. C & D) Defendants argue that Välinge has failed to "allege that either Defendant performs *any* of the three required method steps" in these asserted claims, and further, has failed to sufficiently allege that Defendants exercise "direction or control" over consumers and installers who might be said to perform the steps of the method claims. (D.I. 35 at 8-9 (emphasis in original); *see also* D.I. 54 at 8-9) Välinge responds that, to the contrary, it did allege that *Defendants* perform all of the claimed steps themselves, or otherwise direct or control the performance of those steps. (D.I. 49 at 5)

   3. With regard to Halstead, Välinge points to its allegations that Halstead produces step-by-step installation videos on its website, where "Halstead installers perform[] each step to show customers how to install the flooring products." (*Id.*; *see also* D.I. 26 at ¶ 40 (SAC alleging that Halstead's website, mydiygenius.com, provides such videos); *id.* at ¶ 79 (SAC alleging that the videos show Halstead installers demonstrating how to assemble the floorboards, and describing how the floorboards are assembled in an infringing manner); *id.* at ¶ 90 (same); *id.*, exs. M & N (screenshots of instructional videos found on www.youtube.com that are purported to have been uploaded by "allureflooring," which is the brand name of the accused products allegedly manufactured by Halstead; the webpages also include the web address of Halstead's mydiygenius.com website)); *id.*, ex. BB (screenshot of the mydiygenius.com website with links to installation videos for, *inter alia*, the Allure ISOCORE and TrafficMASTER Allure accused

3

products). These are plausible claims of direct infringement of the asserted method claims. The videos at issue are alleged to depict the completion of all of the steps of the claims. And the allegations (and attached exhibits) indicate that the videos are found on Halstead's own website and were also placed by Halstead on a third-party website. This suggests not only that Halstead is responsible for producing the videos, but it also leads to a fair inference that the installers depicted in the videos engaging in infringement are Halstead employees or are under Halstead's direction and control. (D.I. 49 at 5 (Välinge asserting in its answering brief that the videos depict "Halstead installers" performing each step of the methods))

4.  With regard to Home Depot, Välinge first points to its allegations that Home Depot directly infringed the asserted method claims by providing certain installation guides and videos. (D.I. 49 at 5; *see also* D.I. 26 at ¶ 46 (alleging that Home Depot provides these guides and videos to its customers)) While it doesn't label it as such, Välinge also raises a divided infringement argument by alleging that Home Depot contracts with professional installers that install the accused products in an infringing manner. (D.I. 49 at 5; *see also* D.I. 26 at ¶ 47 (alleging that Home Depot contracts with such installers); *id.*, ex. Y (screen capture of a HomeDepot.com webpage with large text referencing "Floor Installation" and stating that Home Depot "partners with installers and home service contractors . . . to complete your flooring project")) What is missing here, however, are sufficiently detailed allegations as to how it is plausible to believe that someone associated with Home Depot is shown in a video infringing the claims, or that an installer with a contractual relationship with Home Depot actually infringes the

claims.[4] Indeed, when Välinge in its briefing makes reference to Home Depot "videos" that purportedly amount to instances of Home Depot's own direct infringement, it actually cites to the aforementioned *Halstead* videos said to feature *Halstead* installers that are relied upon to show *Halstead*'s direct infringement. (D.I. 49 at 5 (citing D.I. 46, exs. M & N & *id.* at ¶ 79 (which, in turn, also cites to exhibits M and N))) And as for the installers who contract with Home Depot, so far as the Court can tell, there are no allegations as to how it is asserted that those installers actually install the accused products at issue.

5. With regard to Defendants' argument that Välinge has not sufficiently pleaded plausible claims of indirect infringement of all asserted patents, the Court again GRANTS-IN-PART the Motion. It does so as follows.

6. Certain of Defendants' arguments for dismissal are premised on the "knowledge" elements of the claims. Indirect infringement (that is, induced infringement and contributory infringement) both "require, *inter alia*, 'knowledge of the existence of the patent that is [allegedly] infringed' as well as 'knowledge that the acts [at issue] constitute patent infringement.'" *Princeton Dig. Image Corp. v. Ubisoft Entm't SA*, Civil Action No. 13-335-LPS-CJB, 2016 WL 6594076, at *4 (D. Del. Nov. 4, 2016) (alteration in original) (quoting *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 765-66 (2011)). Claims of indirect infringement can be premised on allegations that an alleged infringer had knowledge of the patents and knowledge of patent infringement (1) prior to the filing of the complaint ("pre-suit"

---

[4] Välinge's allegations that Home Depot provides the installation guides is not persuasive because it is not alleged that the installation guides amount to *Home Depot* performing all of the steps of the asserted method claims. (*See* D.I. 26, ex. P (displaying a purported screen capture of an accused product for sale on Home Depot's website with a link to an "Installation Guide"); *see also id.* at ¶ 46)

or "pre-filing" knowledge) and/or (2) at the time of the filing of the complaint ("post-suit" or "post-filing" knowledge). *See, e.g., Princeton*, 2016 WL 6594076, at *8-9; *Fairchild Semiconductor Corp. v. Power Integrations, Inc.*, 935 F. Supp. 2d 772, 777-78 (D. Del. 2013). Defendants argue that Välinge has failed to provide "any support whatsoever" for its assertion that Halstead had pre-suit knowledge. (D.I. 35 at 10 (citing D.I. 26 at ¶ 38)) Välinge responds that Defendants had knowledge of the patents before the filing of the original Complaint because Defendants "have been and are competitors of Välinge in [the flooring] field, and . . . it was well-known in the field that Välinge had these patents and an established licensing program." (D.I. 49 at 6 (citing D.I. 26 at ¶¶ 33, 34, 38))

7. As to pre-suit knowledge, this Court has previously stated that it has been skeptical of "the sufficiency of pleadings charging knowledge that is based [solely] upon a defendant's participation in the same market, media publicity and unrelated litigation by the defendant's competitors concerning the relevant patent." *MONEC Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 232 (D. Del. 2012); *cf. Elm 3DS Innovations, LLC v. Samsung Elecs. Co.*, Civil Action No. 14-1430-LPS-CJB, 2015 WL 5725768, at *2-3 (D. Del. Sept. 29, 2015) (finding that, while allegations of pre-suit knowledge based on the patent-at-issue being well known in the semiconductor industry may not have been sufficient on their own to demonstrate pre-suit knowledge, the allegations were plausible when, *in addition*, it was also alleged that defendants had received a copy of the parent patent to the patent-at-issue, had received a presentation on the parent patent, and had cited to four patents related to, and sharing a common specification with, the patent-at-issue). Välinge has alleged that Halstead is a competitor, that it is "well known in the flooring products industry that Välinge has a substantial

patent portfolio covering flooring products[,]" and that it licenses rights to other manufacturers. (D.I. 26 at ¶¶ 33, 34) But it is still too far of a leap to conclude, at least on the few facts pleaded here, that it is plausible that Halstead knew of every patent in that "substantial" Välinge portfolio (including the asserted patents) and what it would take to infringe those patents.[5] Moreover, Defendants are correct when they note that Välinge has pointed to no allegations that *Home Depot* plausibly had pre-suit knowledge. (D.I. 35 at 10)[6]

8. As to post-suit knowledge, Defendants additionally argue in a footnote that "dismissal of Välinge's indirect infringement allegations prior to the filing of the SAC [are appropriate] as Välinge's original Complaint and First Amended Complaint failed to put Defendants on notice of their allegedly infringing conduct[.]" (*Id.* at 10 n.7) As to post-suit knowledge, "while a plaintiff need not provide a detailed, step-by-step description of the alleged infringement in the complaint, this Court has required some identification of *how* it is that use of

---

[5] Välinge's argument regarding wilfulness contains a lengthier argument in favor of a finding of pre-filing knowledge. (*See* D.I. 49 at 11-16). While they span a greater number of pages, the arguments put forward by Välinge there are (other than a citation to some documents that are not referenced in the SAC, and thus not properly considered) essentially the same as those Välinge made in the indirect infringement/knowledge section of its brief. That is, the argument is that Välinge's patents are well known, that Välinge licenses its patents, and that Halstead is its direct competitor. (*Compare id.* at 11-16, *with id.* at 6)

[6] Välinge also asserts that Defendants' affirmative defense of equitable estoppel demonstrates their "knowledge of Välinge's pre-suit conduct concerning the patents-in-suit[.]" (D.I. 49 at 6 (citing D.I. 36 at ¶ 257 & D.I. 37 at ¶ 257 ("Välinge is barred from pursuing infringement allegations . . . because the longstanding misleading conduct of and/or silence in failing to enforce patents against [Defendants] . . . led [Defendants] to reasonably infer that Välinge did not intend to enforce its patents[.]")) Välinge does not explain how it is that the Court can take into account the content of *Defendants'* pleadings in assessing a Rule 12(b)(6) motion. Beyond that, it cites to no caselaw concluding that similar allegations relating to an affirmative defense like this one amount to, in effect, an admission of pre-suit knowledge of patents-in-suit. And so the Court does not rely on any aspect of these affirmative defenses in its analysis here.

the accused product infringes the patent, in order to plausibly assert that the indirect infringer knew that the downstream use of its products constitutes patent infringement." *Versata Software, Inc. v. Cloud9 Analytics, Inc.*, Civil Action No. 12-925-LPS, 2014 WL 631517, at *3 (D. Del. Feb. 18, 2014) (emphasis in original) (citing *Fairchild Semiconductor*, 935 F. Supp. 2d at 778); *see Princeton*, 2016 WL 6594076, at *9-10. In attempting to counter Defendants' argument, Välinge points only to certain paragraphs of its initial Complaint, (D.I. 49 at 7 (citing D.I. 1 at ¶¶ 1, 36, 41, 46, 51, 56, 61, 66, 71, 76)), suggesting that these paragraphs were enough to put Defendants on notice that actual downstream infringement of the patents was, in fact, occurring. Yet these paragraphs do little more than identify the asserted patents, identify the name of the accused products, and baldly state that the products infringed the patents. (D.I. 1 at ¶¶ 1, 36, 41, 46, 51, 56, 61, 66, 71, 76)[7] That is insufficient to put Defendants on notice of how their products were said to infringe the asserted patents as of that date. *Versata Software*, 2014 WL 631517, at *4. Thus, with regard to the allegations of indirect infringement, the "knowledge of infringement" element of such claims has only been met as of March 28, 2017—the date of the filing of the SAC.[8]

9. Defendants also argue that Välinge did not sufficiently plead plausible claims for contributory infringement for the additional reason that it failed to allege facts indicating that

---

[7] The allegations in the First Amended Complaint are no more substantive in this regard. (*See* D.I. 8)

[8] A claim for induced infringement also requires, *inter alia*, that the alleged infringer "'possessed specific intent to encourage another's infringement.'" *Princeton*, 2016 WL 6594076, at *3 (quoting *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1363 (Fed. Cir. 2012)). Here, Defendants mention this intent requirement only in passing, (*see* D.I. 35 at 11; D.I. 54 at 6-7), and so the Court declines to address the issue further.

"the components sold or offered for sale have no substantial non-infringing uses." *Philips v. ASUSTeK Comput., Inc.*, C.A. No. 15-1125-GMS, 2016 WL 6246763, at *4 (D. Del. Oct. 25, 2016) (quoting *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1337 (Fed. Cir. 2012)); *see also* (D.I. 35 at 11; D.I. 54 at 7-8). What appears to be at the heart of Defendants' assertion are Counts XII and XIII, i.e. contributory infringement of the four asserted method claims of the '499 and '899 patents.[9] The four claims at issue in the SAC seem to describe four slightly different methods of assembling certain floorboards. (*See, e.g.* D.I. 26 at ¶¶ 76, 87; *see also id.*, exs. C & D) The Court does not agree with Välinge's response that all it needed to do here was to track the statutory language regarding the "no substantial non-infringing use" element. (D.I. 49 at 9-10); *see also E.I. DuPont de Nemours & Co. v. Heraeus Holding GmbH*, Civ. Action No. 11-773-SLR-CJB, 2012 WL 4511258, at *8-9 (D. Del. Sept. 28, 2012). And the SAC does not provide the Court with enough facts to help it understand why it is plausible that these four methods are the *only* methods that could be used to assemble the accused products. Välinge would need to at least plead some additional facts that make clear why the accused products have no substantial non-infringing use, such as "that the only way the accused products can lock together is by performing or embodying Välinge's patented locking system." (D.I. 54 at 8)

---

[9] Defendants' assertion here appears focused on those patents with asserted claims that involve methods of assembling the floorboards at issue (the '499 and '899 patents), and it is those patents/infringing uses that the Court discusses in this paragraph. (*See* D.I. 54 at 8) There are other patents referenced in the SAC whose asserted apparatus claims require floor panels, floorboards or "thermoplastic laminate planks" comprised of certain materials and/or having certain attributes. (D.I. 26 at ¶¶ 49-73, 96-172, 191-235) To the extent that Defendants are challenging the allegations as to "no substantial non-infringing use" regarding such patent claims, the Court finds it plausible that a floorboard product comprised of certain materials would be used in no way other than in the manner in which it was constructed.

9

10. In its briefing, Välinge requests leave to amend should the Court grant this Motion. (D.I. 49 at 17-18) Defendants argue that the claims should be dismissed with prejudice as Välinge "has already been afforded three opportunities to correctly plead its claims" (i.e., the filing of the Complaint, the First Amended Complaint, and the SAC). (D.I. 35 at 1; *see also* D.I. 54 at 9-10) The Court is not unsympathetic to Defendants' point, and, at least as to some of the deficiencies listed herein (e.g., those relating to pre-suit knowledge), it is not entirely clear to the Court that Välinge will be able to overcome them. However, this is the first time a court has found Välinge's claims deficient. Because of that, in light of the fact that leave to amend should be given freely "when justice so requires[,]" Fed. R. Civ. P. 15(a)(2), and because dismissal with prejudice is "rarely" a proper sanction, *see Univ. of Pittsburgh v. Varian Med. Sys., Inc.*, 569 F.3d 1328, 1334 (Fed. Cir. 2009) (citing Third Circuit case law), the Court recommends that Välinge be given leave to file one further amended complaint addressing the deficiencies outlined above.

11. For the foregoing reasons, the Court recommends that the Motion be GRANTED without prejudice to the extent that it seeks dismissal of: (1) Välinge's claims against Home Depot for direct infringement of the asserted method claims; (2) induced infringement of the asserted patents against both Defendants prior to the filing of the SAC; and (3) contributory infringement claims against both Defendants as to all asserted patents prior to the filing of the SAC and as to the '499 and '899 patents in their entirety. The Court recommends that the Motion be DENIED to the extent that it seeks dismissal of: (1) Välinge's claims against Halstead for direct infringement of the asserted method claims; (2) induced infringement of the asserted patents against both Defendants after the filing of the SAC; and (3) contributory infringement of

all asserted patents except the '499 and '899 patents after the filing of the SAC.[10]

12. This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006). The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

Dated: November 9, 2017

Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE

---

[10] Välinge's request for oral argument, (D.I. 56), is DENIED.