## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| VÄLINGE INNOVATION AB, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 16-1082-LPS-CJB |
| | ) | |
| HALSTEAD NEW ENGLAND CORP. | ) | |
| and HOME DEPOT U.S.A., INC. | ) | |
| | ) | |
| Defendants. | ) | |

### REPORT AND RECOMMENDATION

In this patent infringement action filed by Plaintiff Välinge Innovation AB ("Plaintiff" or

"Välinge") against Defendants Halstead New England Corporation ("Halstead") and Home

Depot U.S.A., Inc. ("Home Depot") (collectively, "Defendants"), pending is Defendants' motion

to dismiss allegations of willful infringement of United States Patent Nos. 7,398,625; 7,763,345;

8,021,741; 8,365,499; 8,584,423; 8,658,274; 8,756,899; 8,834,992; and 9,249,581 (collectively,

the "asserted patents" or the "patents-in-suit") in Counts I-XVIII in the currently-operative

Second Amended Complaint ("SAC"), filed pursuant to Federal Rule of Civil Procedure 12(b)(6)

(the "Motion"). (D.I. 34) The Motion has been referred to this Court for resolution. (D.I. 5) For

the reasons that follow, the Court recommends that Defendants' Motion be GRANTED without

prejudice.

## I.    BACKGROUND

Välinge alleges that Halstead directly and indirectly infringes the asserted patents, *inter*

*alia*, through the sale, and/or importation of certain of Halstead's flooring products (i.e., certain

floor panel, tile, and floor panel locking systems, referred to herein as the "accused products"); it

alleges that Halstead has sold and continues to sell those products throughout the United States

on a Halstead website and though Home Depot. (D.I. 26 at ¶¶ 35-36) Välinge claims that

Halstead had knowledge of the asserted patents prior to the date of the filing of the original

Complaint in this case. It claims that Halstead obtained such knowledge due to the fact that

Halstead has long been a competitor of Välinge in the flooring products industry, and because of

the "well-known nature of Välinge's patents[.]" (*Id.* at ¶¶ 33-34, 38) Välinge also alleges that

"in addition to [Halstead's] pre-suit knowledge . . . [both Defendants] had actual knowledge of

the Infringed Patents, the Accused Products, and Välinge's allegations of infringement no later

than November 23, 2016," when Defendants received a copy of the original Complaint filed in

this case, along with a letter from Välinge asking Defendants to cease their infringing activity.

(*Id.* at ¶¶ 38, 44) Välinge alleges that after acquiring knowledge of the asserted patents,

Defendants have engaged and continue to engage in "deliberate, willful, and knowing"

infringement of those patents, "entitling Plaintiff to treble damages." (*Id.* at ¶¶ 58, 72, 83, 94,

104, 116, 128, 140, 152, 162, 171, 180, 189, 198, 207, 216, 225, 234; *see also id.* at 52 (alleging,

in the Prayer for Relief, that "Defendants' infringement has been willful"))

     In their Motion and the accompanying briefing, Defendants did not contest that as to

certain of the allegations in the SAC, Välinge had made out a plausible claim of infringement.

That is, Defendants did not contest that in the SAC, Välinge pleaded plausible allegations of

direct infringement of all asserted claims other than claims 1, 25, and 30 of U.S. Patent No.

8,365,499 ("the '499 patent") and claim 1 of U.S. Patent No. 8,756,899 ("the '899 patent")

(collectively, the "asserted method claims"). Defendants *did* argue that Välinge's allegations in

the SAC were deficient in that they failed to state plausible claims of: (1) direct infringement of

the four asserted method claims; (2) indirect and contributory infringement as to all of the

2

asserted patents; and (3) willful infringement as to all of the asserted patents.

In its November 9, 2017 Report and Recommendation ("November 9 R&R"), the Court recommended that Defendants' Motion be granted without prejudice to the extent that it sought dismissal of: (1) Välinge's claims against Home Depot for direct infringement of the asserted method claims; (2) induced infringement claims against both Defendants as to all asserted patents prior to the filing of the SAC; and (3) contributory infringement claims against both Defendants as to all asserted patents prior to the filing of the SAC, and as to the '499 and '899 patents in their entirety. (D.I. 81 at 10) The Court recommended, on the other hand, that the Motion be denied to the extent that it sought dismissal of: (1) Välinge's claims against Halstead for direct infringement of the four asserted method claims; (2) induced infringement of the asserted patents against both Defendants as to infringement occurring after the filing of the SAC; and (3) contributory infringement of all asserted patents, except the '499 and '899 patents, as to infringement occurring after the filing of the SAC. (*Id.*) In the November 9 R&R, the Court did not address Defendants' Motion as it related to the claims of willful infringement. (*Id.* at 2) In the instant Report and Recommendation, the Court will address these willful infringement claims.

In coming to its conclusions in the November 9 R&R, the Court determined that the SAC had not contained plausible allegations that Halstead knew of the patents-in-suit prior to the date of the filing of the original Complaint. (D.I. 81 at 6-7) It explained that even if Halstead was Välinge's competitor during that period, and even if it was well known during that time that Välinge had a substantial patent portfolio, that did not render it plausible that Halstead was aware of every patent in that large portfolio and of what it would take to infringe all of those patents.

3

(*Id.*) Of course, the Court agreed that when Defendants received the original Complaint, they now had knowledge of the patents-in-suit. But because the infringement allegations in that original Complaint—and in the subsequent First Amended Complaint—were of a bare-bones nature, the Court explained that those two pleadings did not contain sufficient information to put Defendants on notice of *how* it is that they were said to infringe the asserted patents thereafter. (*Id.* at 7-8)

Chief Judge Leonard P. Stark adopted the November 9 R&R on January 10, 2018. (D.I. 95)

## II. STANDARD OF REVIEW

The standard of review here is the familiar two-part analysis applicable to motions made pursuant to Rule 12(b)(6). First, the court separates the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Second, the court determines "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). A plausible claim does more than merely allege entitlement to relief; it must also demonstrate the basis for that "entitlement with its facts." *Id.* Thus, a claimant's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In assessing the plausibility of a claim, the court must "'construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Fowler*,

4

578 F.3d at 210 (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).

## III.   DISCUSSION

Defendants argue that Välinge's willfulness allegations[1] are insufficient because they are "general and conclusory allegations that Defendants willfully infringe the [a]sserted [p]atents without any context or factual detail as to how the infringement has been willful or why Defendants' actions amount to an egregious case of patent infringement." (D.I. 35 at 5-6) For its part, Välinge argues that its allegations are sufficiently detailed, and that at the pleading stage "it is not necessary to show that a case is egregious." (D.I. 49 at 11 (internal quotation marks and citation omitted)) Resolving the Motion, then, requires an assessment of what exactly a patentee like Välinge must do to successfully plead a claim of willful infringement.

In 2016, the Supreme Court of the United States issued its decision in *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S. Ct. 1923 (2016); that decision has, in turn, had a profound impact on how district courts have assessed willful infringement claims. And district courts have often disagreed about what lessons are properly drawn from *Halo*. *See Continental Circuits LLC v. Intel Corp.*, No. CV16-2026 PHX DGC, 2017 WL 2651709, at *7 (D. Ariz. June 19, 2017) (noting that the "the law concerning willfulness has been in a state of flux, and *Halo*'s effect on the pleading standard for willful infringement remains unclear") (internal quotation marks and citation omitted); *see also Bobcar Media, LLC v. Aardvark Event Logistics, Inc.*, Case No. 16-CV-885 (JPO), 2017 WL 74729, at *6 (S.D.N.Y. Jan. 4, 2017) (same); *Simplivity Corp. v. Springpath, Inc.*, CIVIL ACTION NO. 4:15-13345-TSH, 2016 WL 5388951, at *16 (D. Mass.

---

[1]     Courts alternately use the terms "willful infringement," "willful," and "willfulness" to describe the same idea. The Court uses these terms interchangeably.

5

July 15, 2016) (noting that "the willfulness landscape has dramatically changed" after *Halo*). These disagreements are of interest to the Court, since it is often called on (as it has been here) to resolve motions seeking dismissal of willfulness claims at the pleading stage.

Below, then, the Court will first summarize (1) the state of the law on willful infringement prior to *Halo* and (2) the *Halo* decision itself. Next, the Court will assess *Halo*'s impact on two hotly disputed issues that are relevant to pleading willful infringement. Thereafter, the Court will set out its view as to what, in fact, a patentee must plead in order to make out a claim of willful infringement. And lastly, with that standard in mind, the Court will address Välinge's allegations in the SAC.

## A.  Willful Infringement Prior to *Halo* and the *Halo* Decision

At the outset, it is worth noting that because patent infringement is a strict liability offense, a finding that a party's infringement is "willful" is relevant only in the sense that it will inform a later district court decision as to whether the patentee is entitled to enhanced damages. *See XY, LLC v. Trans Ova Genetics, L.C.*, — F.3d —, 2018 WL 2324460, at *10 (Fed. Cir. May 23, 2018) (citing *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1274-75 (Fed. Cir. 1999)) (dismissing as moot defendant's appeal of a finding of willful infringement because the district court exercised its discretion to not enhance damages and that decision was not appealed). Pursuant to Section 284 of the Patent Act, once infringement has been established, the court "shall award the claimant damages adequate to compensate for the infringement." 35 U.S.C. § 284. After damages are found by a jury or assessed by a court, the statute explains, a district court may "increase the damages up to three times the amount found or assessed." *Id.*

Prior to *Halo*, the United States Court of Appeals for the Federal Circuit had long held

that, in order for a court to enhance damages pursuant to Section 284, there must first be a

showing of willful infringement. *In re Seagate Tech., LLC*, 497 F.3d 1360, 1368 (Fed. Cir.

2007) (citing cases); *LG Display Co. v. AU Optronics Corp.*, 722 F. Supp. 2d 466, 470, 474 (D.

Del. 2010); *see also SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1464 (Fed. Cir.

1997) (explaining that "willful infringement . . . is the term designating behavior for which

enhanced damages may be assessed"). A finding of willfulness did not require a later award of

enhanced damages; it merely permitted it. *In re Seagate Tech., LLC*, 497 F.3d at 1368.[2]

For many years, the term "willful infringement" did not have a clear, consistent

definition. *See Robert Bosch, LLC v. Pylon Mfg. Corp.*, 719 F.3d 1305, 1326 (Fed. Cir. 2013)

(Reyna, J., dissenting) ("The definition of willful patent infringement has changed significantly

over time."). The Federal Circuit had described the relevant standard using either subjective

language or objective language (or both). *Compare Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572,

1579 (Fed. Cir. 1996) (citation omitted) (noting that whether an infringer was acting "willfully"

rested on a determination of the "infringer's state of mind," i.e., a subjective standard), *with State

Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1581 (Fed. Cir. 1989) (finding that the test

for willfulness was whether "'a reasonable person would prudently conduct himself with any

confidence that a court might hold the patent invalid or not infringed[,]'" i.e., an objective

---

[2]    That said, during this time period, the Federal Circuit instructed that if a jury
found willfulness, but a district court thereafter was of the mind that enhanced damages were not
appropriate, then the district court was required to set out reasons justifying that decision.
Failure to sufficiently articulate such reasons was a basis for reversal. *See Jurgens v. CBK, Ltd.*,
80 F.3d 1566, 1572 (Fed. Cir. 1996) (noting that "a trial court should provide reasons for not
increasing a damages award" upon a finding of willful infringement); *see also Whitserve, LLC v.
Computer Packages, Inc.*, 694 F.3d 10, 37 (Fed. Cir. 2012) (finding that a district court abused
its discretion in denying a motion for enhanced damages without independent justification,
despite the jury's finding of willful infringement).

7

standard) (citation omitted), *and Georgia-Pacific Corp. v. U.S. Gypsum Co.*, 195 F.3d 1322, 1334 (Fed. Cir. 1999) (noting that willfulness "raises issues of reasonableness and prudence, and is often accompanied by questions of intent, belief, and credibility[,]" i.e., both an objective and subjective standard).

Then, in 2007, the Federal Circuit issued its decision in *In re Seagate Tech., LLC*, 497 F.3d 1360 (Fed. Cir. 2007). *Seagate* set out a two-part standard for demonstrating willful infringement. First, the plaintiff was required to show, by clear and convincing evidence, that the infringer had acted despite an objectively high likelihood that its actions constituted patent infringement (without regard to the state of mind of the accused infringer). *In re Seagate Tech., LLC*, 497 F.3d at 1371. Second, if this "objective recklessness" was established, the patentee was required to show that the risk of infringement was either known to the infringer or was so obvious that it should have been known. *Id.* Only when both steps had been satisfied, and willful infringement established, could the district court then proceed to consider whether to exercise its discretion to award enhanced damages. *Id.* at 1368-72.

In *Halo*, however, the Supreme Court ruled that the two-part *Seagate* test, as a prerequisite to enhancing damages, was "unduly rigid, and [] impermissibly encumber[ed] the statutory grant of discretion to district courts" found in Section 284. 136 S. Ct. at 1932 (internal quotation marks and citation omitted). The "principal problem" with that test, according to the *Halo* Court, was that it "require[d] a finding of objective recklessness in every case before district courts may award enhanced damages." *Id.* The Supreme Court noted that requiring a finding of objective recklessness as a prerequisite to enhancing damages "excludes from discretionary punishment many of the most culpable offenders, such as the 'wanton and

8

malicious pirate' who intentionally infringes another's patent—with no doubts about its validity or any notion of a defense—for no other purpose than to steal the patentee's business." *Id.* (citation omitted). The *Halo* Court explained that "culpability is generally measured against the knowledge of the actor at the time of the challenged conduct." *Id.* at 1933. As such, the Court did not see why in "the context of such deliberate wrongdoing . . . an independent showing of objective recklessness—by clear and convincing evidence, no less, should be a prerequisite to enhanced damages." *Id.* at 1932.[3] Instead, it found that "the subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless." *Id.* at 1933. A patentee, the Court explained, also need only prove that enhanced damages are appropriate by a preponderance of the evidence. *Id.* at 1934.

The *Halo* Court cautioned that "none of this is to say that enhanced damages must follow a finding of egregious misconduct." *Id.* at 1933. Instead, "[a]s with any exercise of discretion, courts should continue to take into account the particular circumstances of each case in deciding whether to award damages, and in what amount." *Id.*

Yet the Supreme Court also emphasized that "[c]onsistent with nearly two centuries of enhanced damages under patent law, such punishment should generally be reserved for *egregious cases typified by willful misconduct*." *Id.* at 1933-34 (emphasis added). This was because, over time, federal caselaw had established that such damages are "designed as a 'punitive' or

---

[3]     The *Halo* Court was troubled that "someone who plunders a patent—infringing it without any reason to suppose his conduct is arguably defensible—can nevertheless escape any comeuppance under [Section] 284 solely on the strength of his attorney's ingenuity." 136 S. Ct. at 1933.

9

'vindictive' sanction for egregious infringement behavior" and that the "sort of conduct warranting enhanced damages has been variously described in our cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Id.* at 1932; *see also id.* at 1929 (citing cases).

## B.    Two Key Unresolved Questions After *Halo* Regarding Pleading Willful Infringement

Since *Halo*, district courts have wrestled with a number of issues relevant to assessing a cause of action of willful infringement[4] at the pleading stage.  The Court addresses two of those issues here.

### 1.    Should a Patentee Be Required to Plead Facts Plausibly Evidencing "Egregious" Infringement in Order to State a Claim for Willful

---

[4]       Our Court has long referred to willful infringement as a separate "cause of action[.]"  *See DNA Genotek Inc. v. Ancestry.com DNA, LLC*, Civ. No. 15-355-SLR, 2016 WL 1128491, at *1 (D. Del. Mar. 22, 2016); *MONEC Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 236 (D. Del. 2012) (same).  And post-*Halo*, the Federal Circuit has continued to speak of "the factual components of the willfulness question" as something that "should [continue to] be *resolved* by the jury[,]" noting that "there is a right to a jury trial on the willfulness question." *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 & n.13 (Fed. Cir. 2016) (emphasis added); *see also Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332, 1353 (Fed. Cir. 2018) (noting that "under *Halo* . . . [now] the entire willfulness determination is to be decided by the jury" and that "willfulness is an issue for the jury, not the district court") (citation omitted).  Thus, the Court will continue to consider a claim for willful infringement to be a separate cause of action, and one that if it is pleaded, must be put to a jury for resolution. *See Novitaz, Inc. v. inMarket Media, LLC*, Case No. 16-cv-06795-EJD, 2017 WL 2311407, at *5 (N.D. Cal. May 26, 2017) (explaining that "willfulness[—]should a plaintiff seek to use it as a basis for seeking enhanced damages[—]is still a factual determination that a court must make, and district courts have continued, post-*Halo*, to treat it as a separate claim that can be subject to a motion to dismiss"); *cf. Finjan, Inc. v. Blue Coat Sys., Inc.*, Case No. 13-cv-03999-BLF, 2016 WL 3880774, at *15-17 (N.D. Cal. July 18, 2016), *rev'd in part on other grounds*, 879 F.3d 1299 (Fed. Cir. 2018) (assessing, after a jury found that the defendant infringed five of plaintiff's patents, whether the court should enhance damages pursuant to Section 284, in a case in which the patentee did not claim willful infringement, and explaining that "while willfulness may support a finding of enhancement, *Halo* does not hold that willfulness is necessary for enhanced damages").

## Infringement?

In order to plead that willful infringement has occurred, must the patentee make a showing that the accused infringer has engaged in "egregious" patent infringement? After *Halo*, district courts have disagreed on that question. Some courts (including the Court here) have dismissed claims of willful infringement because the patentee failed to articulate how defendant's conduct "amounted to an egregious case of infringement of the patent." *Varian Med. Sys., Inc. v. Elekta AB*, Civil Action No. 15-871-LPS, 2016 WL 3748772, at *8 (D. Del. July 12, 2016); *see also Finjan, Inc. v. Cisco Sys. Inc.*, Case No. 17-cv-00072-BLF, 2017 WL 2462423, at *5 (N.D. Cal. June 7, 2017) (dismissing plaintiff's willful infringement claim because, *inter alia*, the complaint failed to make sufficient factual allegations that defendant's behavior was "egregious . . . beyond typical infringement") (internal quotation marks omitted); *Jenkins v. LogicMark, LLC*, Civil Action No. 3:16-CV-751-HEH, 2017 WL 376154, at *5 (E.D. Va. Jan. 25, 2017) ("Therefore, the Court finds that, at a minimum, plaintiffs alleging willful infringement must plead facts sufficient to support an inference 'plausible on its face' that the alleged conduct is of the egregious nature described in [*Halo*].").[5] Other courts, including one judge in this District, have held that in order to successfully plead willful infringement, the patentee does *not* need to plead facts plausibly indicating that "egregious" infringement has occurred. *See Bio-Rad Labs. Inc. v. Thermo Fisher Sci., Inc.*, 267 F. Supp. 3d 499, 501 (D. Del. 2017) ("At the pleading stage, it is not necessary to show that the case is egregious."); *see also Progme Corp. v. Comcast*

---

[5]     The Federal Circuit Bar Association's Model Jury Instruction 3.10, which relates to "Willful Infringement," also states that "willful infringement is reserved only for the most egregious behavior, such as where the infringement is malicious, deliberate, consciously wrongful, or done in bad faith." Fed. Cir. Bar Ass'n, Model Patent Jury Instructions § 3.10 (July 2016).

*Cable Commc'ns LLC*, CIVIL ACTION NO. 17-1488, 2017 WL 5070723, at \*12 (E.D. Pa. Nov. 3, 2017) (declining to dismiss a post-suit willful infringement claim, based on the facts that the defendant has had knowledge of the patent and "persisted in its alleged infringement[,]" as "further development of the record [could yield] evidence of egregious conduct"); *cf. Bobcar Media, LLC*, 2017 WL 74729, at \*6 (suggesting that what is required at the pleading stage are allegations that the accused infringer's actions were "subjectively willful[,]" not necessarily that the case is an "egregious case" justifying enhanced damages)).

Although it was previously in the former camp, after having further considered *Halo* and Federal Circuit precedent, the Court has now determined that it was wrong. For at least the following four reasons, the Court concludes that "egregiousness" should not be a part of the calculus for determining whether a patentee has set out a plausible claim of willful infringement.

The first reason has to do with the way the Supreme Court, in *Halo*, discussed the concepts of "willful infringement" on the one hand, and "egregious infringement" or "egregious cases of misconduct beyond typical infringement" on the other. That is, the *Halo* Court confirmed that these are two distinct legal concepts.

This is probably most evident in the portion of *Halo* where the Supreme Court explained that the "subjective willfulness of a patent infringer, intentional or knowing, *may* warrant enhanced damages" and that enhanced damages "should generally be reserved for egregious cases *typified* by willful misconduct." *Halo*, 136 S. Ct. at 1933-34 (emphasis added). These statements, on their face, suggest that "egregious cases" of infringement are the kinds of cases where a district court will be most likely to enhance damages. And they suggest that "willful misconduct" (or willful infringement) will be a characteristic of many—though not necessarily

12

all—"egregious cases" of infringement. But they also indicate that willfulness and egregiousness are not the *same thing*.[6]

This conclusion—that the *Halo* Court did not consider "egregiousness" to be a necessary component of willful infringement—is also evidenced by the way the *Halo* Court described what willful infringement *is*. In rejecting *Seagate*'s two-part test "to establish such willfulness" (i.e., by rejecting the objective component of the *Seagate* test) and in emphasizing the role of the "subjective willfulness of a patent infringer, intentional or knowing" in the Section 284 analysis, the Supreme Court seemed to be affirming the idea that a claim of willful infringement is rightly focused on the infringer's state of mind. *Halo*, 136 S. Ct. at 1933. That is, the Supreme Court seemed to be defining willful infringement as "subjective willfulness" or "intentional or

---

[6]     In his concurring opinion, Justice Breyer appeared to be making this same point. He noted that "the Court's references to 'willful misconduct' do not mean that a court may award enhanced damages simply because the evidence shows that the infringer knew about the patent and *nothing more*." *Halo*, 136 S. Ct. at 1936 (Breyer, J., concurring) (emphasis in original, citation omitted). Instead, he noted that "while the Court explains that 'intentional or knowing' infringement 'may' warrant a punitive sanction, the word it uses is *may*, not *must*" and that it is "'circumstanc[e]' that transforms simple knowledge into such egregious behavior, and that makes all the difference." *Id.* (emphasis in original, citation omitted). It appears that here, Justice Breyer was simply: (1) noting that a finding of willful infringement and a decision to enhance damages under Section 284 are two separate determinations; (2) one might willfully infringe a patent but not necessarily be found to have engaged in "egregious" infringing conduct. Indeed, post-*Halo*, numerous district courts have recognized that a jury may find willful infringement has occurred, and yet the court may thereafter determine that egregious misconduct warranting enhanced damages has *not* occurred. *See XY, LLC v. Trans Ova Genetics, L.C.*, Civil Action No. 13-cv-0876-WJM-NYW, 2016 WL 6664619, at *3-4 (D. Colo. Nov. 10, 2016) (reinstating jury verdict of willful infringement under *Seagate*'s subjective prong in light of *Halo* but denying reconsideration of the court's denial of an award of enhanced damages because the case was not egregious); *cf. Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1382-83 (Fed. Cir. 2017) (noting that, after a jury found willful infringement, "[d]iscretion remain[ed] with the court to determine whether the conduct is sufficiently egregious to warrant enhanced damages[,]" and affirming the district court's ultimate decision not to enhance damages).

13

knowing" infringement. That kind of definition does not include an "egregiousness" component.[7]

The second reason is that, since *Halo*, the Federal Circuit has similarly appeared to define willful infringement without making reference to whether the willful infringer has engaged in what could be called "egregious" behavior. In *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350 (Fed. Cir. 2017), for example, the Federal Circuit reviewed a district court's pre-*Halo* instruction as to what a patentee must prove in order to show that willful infringement has occurred. The district court had instructed the jury that "as to willful infringement, [the plaintiff] must prove . . . that [the defendant] actually knew or should have known that its actions constituted an unjustifiably high risk of infringement of a valid and enforceable patent." *Arctic Cat Inc.*, 876 F.3d at 1371 (emphasis added, internal quotation marks and citation omitted). After the jury found willfulness, on appeal, the defendant argued that the "should have known" component of the instruction was contradicted by *Halo*. But the Federal Circuit reasoned that in *Halo*, the Supreme Court had (1) articulated that willful infringement can be found if there is "subjective willfulness[,]" and (2) noted that *Seagate* described subjective willfulness as "proof that the defendant acted despite a risk of infringement that was either known or so obvious that it should have been known to the accused infringer[.]" *Id.* (certain quotation marks omitted) (quoting *WesternGeco L.L.C. v. ION Geophysical Corp.*, 837 F.3d 1358, 1362 (Fed. Cir. 2016) (quoting *Halo*, 136 S. Ct. at 1930)). Because this subjective test for willful infringement

---

[7]      The Supreme Court used the term "egregious" six times in its majority opinion in *Halo*. Each time, the word was used to refer to the kind of infringement that might warrant a decision to enhance damages; it was never used to define what willful infringement *is*. *Halo*, 136 S. Ct. at 1932-35.

14

included a "should have known" component, the *Arctic Cat* Court found that the district court

had not erred in instructing the jury. *Id.*; *see also Innovention Toys, LLC v. MGA Entm't, Inc.*,

667 F. App'x 992, 994 (Fed. Cir. 2016) (finding that "the predicate of willful misconduct is

established by the jury's finding that [the defendant] was subjectively willful under the second

part of the *Seagate* standard" and that in *Halo*, the Supreme Court did not "doubt that a finding

favorable to the patentee on the second part of the *Seagate* standard suffices to establish the

subjectively willful misconduct that, when present, moves the enhancement inquiry to the stage

at which the district court exercises its discretion"). Thus, in *Arctic Cat*, the Federal Circuit also

confirmed that willful infringement amounts to subjective willfulness. And nowhere in *Arctic*

*Cat* did the Federal Circuit indicate that a component of a willfulness finding involves a

determination as to whether "egregious" infringement was at play.[8] *See Ericsson Inc. v. TCL*

*Commc'n Tech. Holdings, Ltd.*, Case No. 2:15-cv-00011-RSP, 2018 WL 2149736, at *8 (E.D.

Tex. May 20, 2018) ("The implication from . . . *Ar[c]tic Cat* is that the jury must decide whether

---

[8]       At least two pre-*Seagate* Federal Circuit decisions used language that seemed to
suggest that willful infringement and "egregious" infringement were the same thing—that is, that
"[w]illfulness requires a showing that the totality of the circumstances evince the egregious
conduct *that constitutes* willful infringement." *Imonex Servs., Inc. v. W.H. Munzprufer Dietmar
Trenner GmbH*, 408 F.3d 1374, 1377 (Fed. Cir. 2005) (emphasis added) (citing *Knorr-Bremse
Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1342 (Fed. Cir. 2004)); *see
also nCube Corp. v. Seachange Int'l, Inc.*, 436 F.3d 1317, 1323-24 (Fed. Cir. 2006) (citing
*Imonex Servs., Inc.*, 408 F.3d at 1377). Both of these decisions, either directly or indirectly, were
relying on the Federal Circuit's decision in *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v.
Dana Corp.*, 383 F.3d 1337 (Fed. Cir. 2004) for this premise.

But *Knorr-Bremse* does not stand for this proposition. *Knorr-Bremse* never explicitly
stated that a claim of willful infringement requires egregious conduct—in fact, the term
"egregious" was not used in the majority opinion at all. *Knorr-Bremse*, 383 F.3d at 1340-48.
Rather than addressing that issue, *Knorr-Bremse* was primarily concerned with the propriety of
an adverse inference in relation to opinions of counsel, and how such an inference relates to the
willful infringement inquiry. *Id.*

the infringement was intentional, and then the court must decide whether the intentional conduct was egregious enough to justify enhanced damages.").

The third reason has to do with how courts typically define and/or assess whether "egregious" misconduct has occurred in a patent case. In *Read Corp. v. Portec, Inc.*, 970 F.2d 816 (Fed. Cir. 1992), the Federal Circuit set out a list of factors (the "*Read* factors") that district courts can use to help determine "the egregiousness of the [accused infringer's] conduct[;]" the *Read* Court described such "egregiousness" as a "paramount determination" in "deciding [whether to] grant enhancement [pursuant to Section 284] and the amount thereof[.]" *Read Corp.*, 970 F.2d at 826-27. The nine factors, which the court found were "in line with punitive damage considerations in other tort contexts[,]"[9] were:

> (1) whether the infringer deliberately copied the ideas or design of another;[] (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; [] (3) the infringer's behavior as a party to the litigation[;] (4) [d]efendant's size and financial condition[;] (5) [the c]loseness of the case[;] (6) [the d]uration of defendant's misconduct[;] (7) [r]emedial action by the defendant[;] (8) [d]efendant's motivation for harm[; and] (9) [w]hether defendant attempted to conceal its misconduct.

*Id.* at 827-28 (citations omitted). Although a court is not required to utilize the *Read* factors in assessing whether to award enhanced damages (and, if so, how much to award), *see Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1382-83 (Fed. Cir. 2017), district courts have continued to do so after *Halo*, *see, e.g.*, *Idenix Pharm. LLC v. Gilead Scis., Inc.*, 271

---

[9]     That the factors were in line with punitive damage considerations keeps *Read* squarely aligned with *Halo*, which noted that enhanced damages were designed to be a punitive or vindictive sanction for egregiously culpable infringement behavior. *Halo*, 136 S. Ct. at 1932.

F. Supp. 3d. 694, 697 (D. Del. 2017); *Polara Eng'g, Inc. v. Campbell Co.*, 237 F. Supp. 3d 956, 992 (C.D. Cal. 2017), and the Federal Circuit has continued to sanction such use, *see, e.g.*, *Georgetown Rail Equip. Co. v. Holland L.P.*, 867 F.3d 1229, 1244-45 (Fed. Cir. 2017) (noting that district courts often apply the *Read* factors when deciding how much to award in enhanced damages); *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1325, 1342 (Fed. Cir. 2016).

It is not surprising that many of the *Read* factors are relevant to the question of whether an accused infringer willfully infringed the patent-in-suit *and* to the broader question of whether enhanced damages are appropriate.[10] After all, intent and culpability are central to both determinations. *Compare Halo*, 136 S. Ct. at 1933 (noting that Section 284 allows courts "to punish the full range of culpable behavior"), *with Nat'l Presto Indus., Inc. v. West Bend Co.*, 76 F.3d 1185, 1192 (Fed. Cir. 1996) (noting that liability for willful infringement "turns on considerations of intent, state of mind, and culpability"). But what is noteworthy in this context is that a number of the *Read* factors go to issues that a jury *could not and should not* decide. For example, the "closeness of the case," "behavior as a party to litigation," and the "size and financial condition" of the infringer are not factors that a jury really can or should assess in determining whether willful infringement has occurred. *See Idenix Pharm. LLC*, 271 F. Supp. 3d at 697 (noting, in making a determination whether to enhance damages, that the aforementioned three *Read* factors concerned matters that were either not before the jury or which a jury would

---

[10]  It should be noted that in considering the *Read* factors, "a judge cannot substitute his or her factual determination for a jury's willfulness finding." *Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*, 265 F.3d 1294, 1310-11 (Fed. Cir. 2001).

17

not be a position to assess).[11] From this, the Court concludes that: (1) if there are certain factors that may go into assessing whether an infringer's conduct was "egregious," but those factors cannot be determined by a jury, and (2) we know that it is the jury that determines whether willful infringement has occurred, then (3) egregiousness must not be an element of a willful infringement claim, such that (4) it would be wrong to assess whether a plaintiff has plausibly pleaded willful infringement by asking whether the plaintiff has set out a plausible claim of "egregious" infringement.

The fourth reason has to do with the way that the Federal Circuit has in the past described how willful infringement (and patent infringement more generally) can consist of a spectrum of behavior. In *Rite-Hite Corp. v. Kelley Co.*, 819 F.2d 1120 (Fed. Cir. 1987), the Federal Circuit explained that willfulness "is not an all-or-nothing trait, but one of degree[,]. . . . [which] recognizes that [patent] infringement may range from unknowing, or accidental, to deliberate, or reckless, disregard of a patentee's legal rights." *Rite-Hite Corp.*, 819 F.2d at 1125-26. The court further clarified that:

> The term "willfulness" thus reflects a *threshold of culpability* in the act of infringement that, alone or with other considerations of the particular case, contributes to the court's assessment of the consequences of patent infringement. These consequences include the assessments provided by statute for multiplied damages and/or attorney fees. Whether or not "willfulness" is found, the court has authority to consider the *degree of culpability* of the tortfeasor.

---

[11] *See also Advanced Cardiovascular Sys., Inc.*, 265 F.3d at 1311 (noting that "behavior as a party to the litigation," and "[c]loseness of the case" are factors "that a jury is not in the best position to assess"); *Amstead Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 184 (Fed. Cir. 1994) (finding that a "trial judge is in the best position to weigh considerations such as the closeness of the case, the tactics of counsel, the conduct of the parties, and any other factors that may contribute to a fair allocation of the burdens of litigation as between winner and loser") (internal quotation marks and citation omitted).

*Id.* at 1126 (emphasis added); *see also Read Corp.*, 970 F.2d at 828 (explaining that a finding of willful infringement does not mandate the enhancement of damages and that the *Read* factors would assist the trial court, after a finding of willful infringement by the jury, "in evaluating the degree of the infringer's culpability"); *TA Instruments, Inc. v. Perkin-Elmer Corp.*, 277 F. Supp. 2d 367, 379 (D. Del. 2003) (finding that enhanced damages were warranted because defendant's willful infringement was "highly culpable" and rejecting defendant's argument that its willful infringement was "at the least culpable end of the spectrum of willfulness"). If there can be many kinds of patent infringers, and even many kinds of willful infringers—some more culpable, some less culpable, depending on the facts—then requiring a patentee to plead facts suggesting that every alleged willful infringer has exhibited "egregious" behavior seems out of line with what is necessary to simply show that the infringer has acted "willfully."

For all of these reasons, the Court concludes that in considering whether a patentee has successfully pleaded willful infringement, it should no longer require that the patentee plead facts plausibly evidencing "egregious" infringement conduct.

> **2.    Can a Patentee Withstand a Motion to Dismiss a Claim of Willful Infringement If There is No Evidence of Willful Infringement As of the Date of the Filing of the Claim?**

The Federal Circuit reiterated after *Halo* that "[k]nowledge of the patent alleged to be willfully infringed continues to be a prerequisite to enhanced damages." *WBIP, LLC*, 829 F.3d at 1341 (citing *Halo*, 136 S. Ct. at 1932-33); *see also Scripps Research Inst. v. Illumina, Inc.*, Case No. 16-cv-661 JLS (BGS), 2016 WL 6834024, at *7 (S.D. Cal. Nov. 21, 2016) (dismissing willfulness claims where plaintiff failed to plead knowledge of the patent-in-suit). Courts are

19

split, however, on whether post-suit[12] knowledge of a patent can alone suffice to make out a claim of willful infringement.

In *Seagate*, in the course of considering whether an "advice of counsel" defense waives the attorney client privilege at trial, the Federal Circuit noted that "in ordinary circumstances, willfulness will depend on an infringer's prelitigation conduct." *In re Seagate Tech., LLC*, 497 F.3d at 1374. Although the *Seagate* Court noted that "patent infringement is an ongoing offense that can continue after litigation has commenced[,]" it reasoned that since "a patentee must have a good faith basis for alleging willful infringement" at the time a "complaint is filed," then "a willfulness claim asserted in the original complaint must necessarily be grounded exclusively in the accused infringer's pre-filing conduct." *Id.* (citing Fed. R. Civ. P. 8, 11(b)). The *Seagate* Court also explained that, "[b]y contrast, when an accused infringer's post-filing conduct is reckless, a patentee can move for a preliminary injunction, which generally provides an adequate remedy for combating post-filing willful infringement." *Id.* It then stated that a "patentee who does not attempt to stop an accused infringer's activities in this manner should not be allowed to accrue enhanced damages based solely on the infringer's post-filing conduct." *Id.* The *Seagate* Court did recognize that there may be some limited circumstances where a patentee may be denied a preliminary injunction due to reasons that have little to do with whether it can show that the accused infringer knowingly or recklessly infringed a valid patent-in-suit—such as when a preliminary injunction is denied based on consideration of relevant factors other than the "likelihood of success on the merits" factor. 497 F.3d at 1374. In that event, the *Seagate* Court

---

[12] The Court uses "post-suit" and "post-filing" conduct interchangeably, to refer to conduct occurring after the date on which the patentee files the relevant claim of willful infringement.

allowed that "whether a willfulness claim based on conduct occurring solely after litigation began is sustainable will depend on the facts of each case." *Id.*

After *Seagate*, many courts, including judges of this Court, ruled that *Seagate* stood for the proposition that "a patentee cannot recover enhanced damages based *solely* on an accused infringer's post-filing conduct where the patentee has not sought a preliminary injunction." *SoftView LLC v. Apple, Inc.*, Civ. No. 10-389-LPS, 2012 WL 3061027, at *8 (D. Del. July 26, 2012) (emphasis in original); *see also Inventio AG v. Thyssenkrupp Elevator Ams. Corp.*, Civil Action No. 08-874-RGA, 2013 WL 6117605, at *2 (D. Del. Nov. 20, 2013).[13] And indeed, to the Court, that does seem to be what *Seagate* was saying.

Recently some courts, including some judges of this Court, have held that the prior rule proscribing solely post-suit willful infringement claims (absent a filing of a motion for a preliminary injunction) should be discarded, on the ground that it does not jibe with the overall tenor of the Supreme Court's decision in *Halo*. *See, e.g., Progme Corp.*, 2017 WL 5070723, at *12; *T-Rex Prop. AB v. Regal Entm't Grp.*, Case No. 6:16-cv-927-RWS-KNM, 2017 WL 4229372, at *8 (E.D. Tex. Aug. 31, 2017); *Zimmer Surgical, Inc. v. Stryker Corp.*, Civil Action No. 16-679-RGA-MPT, 2017 WL 3736750, at *2 (D. Del. Aug. 30, 2017); *Apple Inc. v. Samsung Elecs. Co.*, 258 F. Supp. 3d 1013, 1025-27 (N.D. Cal. 2017); *DermaFocus LLC v. Ulthera, Inc.*, 201 F. Supp. 3d 465, 473 (D. Del. 2016). Other courts, however, have concluded

---

[13]     That said, some judges of this Court permitted a non-practicing entity patentee who did not allege willful infringement in an original complaint to file an amended complaint containing that allegation, even if the patentee had not sought a preliminary injunction. *Clouding IP, LLC v. Amazon.com, Inc.*, C.A. No. 12-641-LPS, 2013 WL 2293452, at *4-5 (D. Del. May 24, 2013). Others did not permit this practice. *See, e.g., Callwave Commc'ns LLC v. AT & T Mobility LLC*, Civil Action No. 12-1701-RGA, 2014 WL 5363741, at *1 (D. Del. Jan. 28, 2014).

21

that the *Halo* decision did not upset *Seagate*'s holding that the focus of a willful infringement

claim should be on pre-litigation conduct. *See Wis. Alumni Research Found. v. Apple, Inc.*, 261

F. Supp. 3d 900, 917-18 & n.6 (W.D. Wis. 2017); *Cooper Lighting, LLC v. Cordelia Lighting,*

*Inc.*, Civil Action File No. 1:16-CV-2669-MHC, 2017 WL 3469535, at *2-3 (N.D. Ga. Apr. 6,

2017); *CG Tech. Dev., LLC v. FanDuel, Inc.*, 2:16-cv-00801-RCJ-VCF, 2017 WL 58572, at *6

(D. Nev. Jan. 4, 2017).[14]

      The Federal Circuit has addressed this issue squarely in at least one instance post-*Halo*, in

*Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275 (Fed. Cir. 2017). In the Court's view,

*Mentor Graphics* provides the best indication as to what is the current state of the law on this

question.

      In *Mentor Graphics*, the declaratory judgment plaintiff ("Synopsys") filed the action,

seeking a decision that the patent-in-suit was invalid and not infringed; thereafter, the defendant

("Mentor") answered and counterclaimed that Synopsys willfully infringed that patent. 851 F.3d

at 1295. The district court later granted Synopsys' motion in limine to preclude Mentor from

presenting evidence of willfulness at trial. It did so on the ground that Mentor had "relied

exclusively on post-suit willfulness conduct" and "had not first sought a preliminary

injunction[,]" stating "'I think Synopsys is right about what we will call the *Seagate* rule, which

is if you don't seek an injunction, you can't seek willful infringement for post-filing conduct.'"

---

[14]    The Court has not previously rendered an opinion on the issue, having simply
assumed without deciding that, after *Halo*, a willful infringement claim based solely on
post-filing conduct may be cognizable (in a case where the Court decided that the willful
infringement allegations were nevertheless wanting). *See Princeton Dig. Image Corp. v. Ubisoft*
*Entm't SA*, Civil Action No. 13-335-LPS-CJB, 2016 WL 6594076, at *11 n.20 (D. Del. Nov. 4,
2016).

*Id.* (citation omitted). In finding that the district court abused its discretion in precluding Mentor from presenting evidence of willful infringement, the *Mentor Graphics* Court held that the district court had committed two errors.

First, the *Mentor Graphics* Court ruled that the district court "erred in determining that the alleged conduct was post-suit conduct because it erred in determining the filing date of the relevant suit." *Id.* On this point, the Federal Circuit held:

> The relevant date for determining which conduct is pre-suit is the date of the patentee's affirmative allegation of infringement, in this case the date of Mentor's counterclaim. *See Seagate*, 497 F.3d. at 1374 (explaining that "in ordinary circumstances, willfulness will depend on an infringer's prelitigation conduct" because "a patentee must have a good faith basis for alleging willful infringement"). Mentor relies on Synopsys' acquisition of EVE [another defendant entity, founded by former Mentor employees], which terminated the license and rendered all subsequent sales infringing. These events occurred after the declaratory judgment was filed but prior to Mentor's counterclaim for infringement. The alleged acts of infringement are thus pre-suit acts, and there is accordingly no basis for excluding Mentor's evidence of willfulness.

*Id.*

In the Court's view, this portion of *Mentor Graphics* seems to be saying that in order for a patentee to have a viable claim of willful infringement, the patentee must allege in the governing pleading (there, the answer containing the counterclaim at issue) that the accused infringer had willfully infringed prior to that date. If this was no longer a requirement after *Halo*, then the Federal Circuit could easily have said so—i.e., it could have simply said that it *did not matter* whether the alleged infringing conduct was entirely "post-suit" conduct, because a claim of willful infringement *may* solely be based on post-suit conduct. But the *Mentor Graphics* Court did not say that. Instead, it cited *Seagate* approvingly for at least the proposition that there

23

is a "relevant date for determining which conduct is pre-suit" for purposes of successfully making out a claim of willful infringement: the date of the filing of the willful infringement claim at issue. This all indicates to the Court, then, that if a patentee wishes to successfully plead a claim of willful infringement, the patentee needs to be able to allege that some form of willfully infringing conduct has occurred as of the time it files its claim. *See Adidas Am., Inc. v. Skechers USA, Inc.*, Case No. 3:16-cv-1400-SI, 2017 WL 2543811, at \*4 (D. Or. June 12, 2017) (citing this portion of the *Mentor Graphics* decision as supporting the proposition that "[a] patentee . . . must have a good faith basis for alleging willful infringement at the time when the complaint is filed").[15]

---

[15]     This can be seen as being in line with the thrust of the *Halo* decision. As was previously noted, *Halo* placed emphasis on the fact that willful infringement should be understood to require only *subjective* willful infringement, explaining that "culpability is generally measured against the knowledge of the actor at the time of the challenged conduct" and that considerations of objective recklessness had no place in the test for willful infringement. *Halo*, 136 S. Ct. at 1933. But at times when a patentee files an original complaint, the accused infringer has not yet even been served with that pleading. If there is allegation of willful infringement in that complaint, and if it is solely based on the idea that once the accused infringer is served with the pleading, he will thereafter know of the patent-in-suit and willfully infringe (i.e., if the accused infringer were to continue the infringing conduct thereafter), then technically, at the time of the filing, the accused infringer does not yet have the requisite "culpability" or offending "knowledge." *Adidas Am., Inc.*, 2017 WL 2543811, at \*4 (citation omitted) ("If the defendant does not learn of the patent's existence until the plaintiff files a complaint for infringement, there is no basis upon which the plaintiff can plead that the defendant's infringement was willful."). One would have to wait to see what happened thereafter in order to determine whether a claim for willful infringement was sound.

That is not to say that culpable conduct warranting enhanced damages cannot occur after an original complaint is filed. It is just to say that, if it does, then the patentee would have to amend its complaint (or seek leave to do so) if it had evidence that, post-filing, willful infringement had in fact now occurred. *Cf. Clouding IP, LLC*, 2013 WL 2293452, at \*5 ("Additionally, [plaintiff's] willful infringement claims are not 'based *solely* on the infringer's post-filing conduct,' as they are based, at least in part, on conduct predating the operative amended complaint.") (emphasis in original, citation omitted).

The second error highlighted by the *Mentor Graphics* Court was that the district court had "erred in concluding that Synopsys could not present evidence of post-filing willful infringement because Synopsys did not seek a preliminary injunction." 851 F.3d at 1295. Here, the *Mentor Graphics* Court explained:

> We also disagree with the district court's second decision—that Mentor could not assert willful infringement because it did not seek a preliminary injunction. As we noted in *Aqua Shield*, there is "no rigid rule" that a patentee must seek a preliminary injunction in order to seek enhanced damages. *Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 773-74 (Fed. Cir. 2014); *see Halo Elecs., Inc. v. Pulse Elecs., Inc.*, — U.S. —, 136 S. Ct. 1923, 1934, 195 L.Ed.2d 278 (2016) ("[W]e eschew any rigid formula for awarding enhanced damages under § 284 . . . .").

*Id.* at 1295-96.

One could read the import of this statement in different ways. On the one hand, it could be that the reason why Mentor, the patentee, was not required to have filed for a preliminary injunction in order to pursue a willful infringement claim (pursuant to the rationale set out in *Seagate*) was that Mentor's claim was *not solely* a "post-suit" willful infringement claim. Yet this does not seem to be what the *Mentor Graphics* Court intended. Instead, it appears that the Federal Circuit here was: (1) referring to *Seagate*'s "rule" that in certain circumstances, in order to claim willful infringement, one must have first filed for a preliminary injunction; and (2) deeming this to be an unduly "rigid" rule—one not in keeping with the spirt of the *Halo* decision. *See Apple Inc.*, 258 F. Supp. 3d at 1026. Thus, it appears that the *Mentor Graphics* Court was stating that, going forward, the fact that a patentee does not file for a preliminary injunction should not be a barrier to that party's ability to bring any type of claim for willful infringement.

In sum, then, in light of *Mentor Graphics*: (1) to state a claim of willful infringement, the

patentee must allege facts in its pleading plausibly demonstrating that the accused infringer had committed subjective willful infringement as of the date of the filing of the willful infringement claim; but (2) whether the patentee filed for a preliminary injunction will not be relevant to a consideration of whether its willful infringement claim is sufficiently pleaded.

## C. What *Does* a Patentee Need to Plead to Plausibly Allege Willful Infringement After *Halo*?

So, with all of this in mind, what *are* the pleading requirements for a claim of willful infringement? As discussed above, "willful infringement" should now be understood to refer to subjective willful infringement—meaning that the focus must be on "the subjective willfulness of a patent infringer, intentional or knowing[.]" *Halo*, 136 S.Ct. at 1933; *see also WesternGeco L.L.C.*, 837 F.3d at 1362. In order to survive a motion to dismiss, then, the allegations regarding willful infringement must simply render it plausible that this type of conduct has occurred as of the date of the filing of the claim.

In order to make this showing, it is clear that the patentee must plead facts plausibly suggesting that the accused infringer had prior knowledge of the patent(s)-in-suit. One cannot infringe a patent with the requisite state of mind for this type of claim if one does not know of that patent's existence. *See, e.g., Atmos Nation, LLC v. BnB Enter., LLC*, CASE NO. 16-62083-CIV-DIMITROULEAS, 2017 WL 5004844, at *2 (S.D. Fla. Aug. 22, 2017); *Scripps Research Inst.*, 2016 WL 6834024, at *7; *cf. WCM Indus., Inc. v. IPS Corp.*, — F. App'x —, 2018 WL 707803, at *7 (Fed. Cir. Feb. 5, 2018).

From there, it stands to reason that there must be some other factual allegations that go to the accused infringer's subjective intent to infringe—i.e., that plausibly demonstrate that the

26

accused infringer not only knew of the patent-in-suit, but also knew or should have known that what it was doing (and what it continued to do) amounted to infringement of that patent. This will necessarily require an assessment of the totality of the patentee's allegations, *Nanosys, Inc. v. QD Vision, Inc.*, Case No. 16-cv-01957-YGR, 2016 WL 4943006, at *7 (N.D. Cal. Sept. 16, 2016), as a sufficiently plausible showing could come in many different forms, *see, e.g., Bio-Rad Labs. Inc.*, 267 F. Supp. 3d at 501 (finding allegations of willful infringement plausible, where the allegations were that plaintiff gave defendant notice of defendant's infringement of the patent in March 2013, plaintiff sent proposed licensing terms to the defendant in January 2014, plaintiff sent a May 2015 letter to defendant reminding it that sales of the accused products amounted to infringement, that the defendant or an affiliated company thereafter directed the filing of an opposition to a European counterpart of the patent, and that the defendant continued to sell the accused products); *Bobcar Media, LLC*, 2017 WL 74729, at *6 (finding willful infringement allegations plausible where the plaintiff sent multiple letters to defendant describing the alleged infringement, including a pre-suit letter that named particular patents at issue, identified the defendant's allegedly infringing products, and informed the defendant that the plaintiff believed it to be using plaintiff's patents without authorization, and where the defendant, *inter alia*, continued to engage in infringing activities).

In sum, in order to sufficiently plead willful infringement, a plaintiff must allege facts plausibly showing that as of the time of the claim's filing, the accused infringer: (1) knew of the patent-in-suit; (2) after acquiring that knowledge, it infringed the patent; and (3) in doing so, it knew, or should have known, that its conduct amounted to infringement of the patent.

**D.     Välinge's Claims of Willful Infringement**

27

With the above standard in mind, the Court finds that Välinge fails to make out plausible claims for willful infringement of the asserted patents. As the Court noted in its prior November 9 R&R, Välinge did not plausibly allege that Defendants had knowledge of the patents as of the date of the filing of the original Complaint. (D.I. 81 at 6-7) Additionally, Välinge did not plead sufficient facts in the SAC to plausibly demonstrate that, between the date of filing of the original Complaint and the date of the filing of the SAC, Defendants were on notice of how it is that they were said to infringe the asserted patents. (*Id.* at 8)

The Court's November 9 R&R did explain that, as to at least some claims of infringement, the SAC itself sufficiently gave Defendants notice of how they could be said to infringe the asserted patents in certain ways. (*Id.* at 2-8) But because this notice was not provided until the date of the filing of SAC, Välinge would not have been able to make out a claim for willful infringement as of that date. It is possible that, thereafter (i.e., now that Defendants were aware of the asserted patents and of plausible allegations that they infringe those patents), Välinge might be able to plead facts plausibly showing that Defendants had the subjective intent to infringe and did in fact continue to infringe the asserted patents. But such an allegation would have to be made in a further filing.

The Court had previously recommended that Välinge be given one final opportunity to amend its complaint, (*id.* at 10), and the District Court affirmed this recommendation, (D.I. 95). If Välinge chooses to file such a further amended complaint, the Court recommends that therein it be given a final opportunity to sufficiently plead any claim for willful infringement.

## IV. CONCLUSION

For the foregoing reasons, the Court recommends that the Motion be GRANTED

28

without prejudice to the extent that it seeks dismissal of Välinge's claims against both Defendants for willful infringement of the asserted patents.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

Dated: May 29, 2018                    _Chntilni A. Fmke_

                                       Christopher J. Burke
                                       UNITED STATES MAGISTRATE JUDGE